UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH KINNEY,

        Petitioner,

v.                                CIVIL ACTION NO. 08-10335
                                       HON. BERNARD A. FRIEDMAN

NICK J. LUDWICK,

        Respondent.

_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

        Petitioner Joseph Kinney, also known as Joseph J. Kenny, has filed a *pro se* habeas corpus petition challenging his Wayne County convictions for assault with intent to commit murder and two firearm offenses. Respondent urges the Court to deny the petition on the ground that Petitioner's claims are not cognizable on habeas review and do not provide a basis for federal habeas relief. Having reviewed the pleadings and record, the Court agrees with Respondent that Petitioner is not entitled to habeas relief. Accordingly, the habeas petition will be denied.

**I. Background**

        Petitioner was charged in Wayne County, Michigan with assault with intent to commit murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony. The convictions arose from the shooting of Norman Molette on Mecca Street in Detroit on August 28, 2002. Mr. Molette had been in a fist fight with Petitioner's cousin, Eric Porter, earlier that day. Petitioner and Porter subsequently drove to the house where Molette had gone after the

fight.  Petitioner got out of the car, pulled out a gun from behind him, threatened to kill Molette if he did not run, and then fired at Molette.  Molette sustained several gunshot wounds during the incident.  Although witnesses provided the police with Petitioner's and Porter's names, Petitioner moved to Alabama after the shooting.  He was not arrested until a few years later when the police received a tip on his whereabouts.

Petitioner subsequently was tried before a jury in Wayne County Circuit Court.  On August 10, 2005, the circuit court jury found Petitioner guilty, as charged, of assault with intent to commit murder, Mich. Comp. Laws § 750.83, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.  The trial court sentenced Petitioner as a habitual offender to five years in prison for the felony firearm conviction, followed by concurrent terms of thirty-five to sixty years for the assault conviction and four to seven and a half years for the felon-in-possession conviction.  The Michigan Court of Appeals affirmed Petitioner's convictions, but remanded his case to the trial court for re-sentencing due to improper scoring of the sentencing guidelines.  *See People v. Kinney*, No. 2650654 (Mich. Ct. App. Feb. 15, 2007).  On July 30, 2007, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues.  *See People v. Kinney*, 479 Mich. 861; 735 N.W.2d 287 (2007) (table).  Petitioner was then re-sentenced to imprisonment for twenty-two to sixty years for the assault conviction.  The sentences for the other crimes remained the same.

Petitioner filed his habeas corpus petition on January 23, 2008.  The grounds for relief read:

I.      I was denied due process when two of my prior convictions were
        introduced for propensity purposes.

        I was convicted of [carrying a concealed weapon] in 1990 and a

2

felony firearm and felonious assault in 1992.  The prosecution was
allowed to [pursue the matter] in depth, yet the prosecution violated
instructions by Judge D. Hathaway to not bring up the death in my
1992 conviction.

II.     I was denied due process right to a fair trial when evidence was
admitted showing I was on Detroit's Most Wanted List and that I
moved to Alabama after the shooting.

While the habeas petition was pending in this Court, Petitioner filed a motion for

relief from judgment in the trial court.  He raised the following issues:

I.      Prosecution even with prior knowledge of this case used deceptive
tactics, perjured testimony, and went unchecked by judge, while
constantly violating Defendant's right to due process.

II.     By violating a direct ruling by Judge, prosecution did in fact use
death in Defendant's '92 conviction for propensity purpose, a direct
violation of MRE 403 and 404(b).

III.    Out of a panel of forty-two perspective (sic) jurors only four were of
color, prosecution then dismissed one of these jurors of color and
gave false reasoning for his decision.

IV.     Ineffective assistance of counsel was shown by the hindering tactics
by judge and prosecution to insure that defense counsel could not
effectively do his job.

The trial court denied Petitioner's motion, and the Michigan Court of Appeals denied

leave to appeal because Petitioner had failed to establish entitlement to relief under Michigan Court

Rule 6.508(D).  *See People v. Kinney*, No. 290996 (Mich. Ct. App. Aug. 27, 2009).[1]  Petitioner

attempted to file an application for leave to appeal in the Michigan Supreme Court, but the state

supreme court rejected his application as untimely on December 3, 2009.  In a letter dated January

6, 2010, Petitioner asked this Court to look at the merits of his state-court motion for relief from

---

[1]  Judge Cynthia Diane Stephens voted to grant Petitioner's delayed application for leave
to appeal.

3

judgment and to proceed with his habeas petition. *See* Dkt. #10, filed January 11, 2010.

## II.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

## III.  Discussion

### A.  Petitioner's Prior Convictions

Petitioner alleges that he was denied due process of law when the prosecutor introduced evidence of his prior convictions for carrying a concealed weapon and felonious assault. Petitioner contends that the convictions were improper propensity evidence, which was meant to

4

show that he was a bad person.

### 1. The 1990 Conviction for Carrying a Concealed Weapon

In 1990, Petitioner was convicted of carrying a concealed weapon in a vehicle. That conviction was introduced as evidence at Petitioner's trial in this case through the testimony of police officer Zebedee Britt.

Prosecutorial misconduct can occur "when a prosecutor dwells on a defendant's bad character to prove that he or she committed the crime charged." *Cristini v. McKee*, 526 F.3d 888, 899 (6th Cir. 2008). The trial court, however, ruled at a pretrial hearing in this case that the prosecutor could introduce evidence of Petitioner's prior convictions. The prosecutor therefore was entitled to rely in good faith on the trial court's ruling, *id*. at 900, and although the Michigan Court of Appeals held that the evidence was inadmissible under state law, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991).

Petitioner maintains that the admission of evidence about his prior convictions violated his constitutional right to due process. The Michigan Court of Appeals, however, held that the error was harmless. On habeas review, an error is deemed harmless unless it had a "substantial and injurious effect or influence" on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). This standard applies "whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman* [*v. California*, 386 U.S. 18 (1967)]." *Fry v. Pliler*, 551 U. S. 112, 121-22 (2007).

5

> Under the Brecht standard, the Government has the burden of
> showing that the error was harmless. *Ruelas v. Wolfenbarger*, 580
> F.3d 403, 413 (6th Cir. 2009) (citing *O'Neal v. McAninch*, 513 U.S.
> 432, 436, 115 S. Ct. 992, 130 L. Ed. 2d 947 (1995)). Further, if the
> court is in "grave doubt" about whether the error had a substantial
> effect on the jury, then the error is not harmless. *Gravely v. Mills*, 87
> F.3d 779, 789 (6th Cir. 1996) (quoting *O'Neal*, 513 U.S. at 436).
> Federal courts review the entire record de novo to determine the
> effect of the error. *Franklin* [*v. Bradshaw*, 545 F.3d 409, 413 (6th
> Cir. 2008)]. "Inquiry cannot merely be whether there was enough to
> support the result, apart from the phase affected by the error," but
> instead "whether the error had substantial influence." *Kotteakos*, 328
> U.S. at 765. The analysis should result from "examination of the
> proceedings in their entirety." *Id*. at 762.

*Jaradat v. Williams*, __ F.3d __, __, No. 09-3193, 2010 WL 114372, at *5 (6th Cir. 2010).

Several eyewitnesses in this case testified that Petitioner approached Norman Molette

on the afternoon in question and pulled out a gun. Petitioner threatened to kill Molette if he ran.

He then fired his gun at Molette several times. The eyewitnesses determined from the sound of the

gunshots that they were all fired from the same gun. Defense counsel argued that Petitioner fired

in self-defense, but Molette and the four eyewitnesses to the incident testified that Molette was not

armed and did not reach for a weapon. Bystanders provided Petitioner's name to the police.

In addition to this overwhelming evidence of Petitioner's guilt, the trial court

instructed the jurors three times not to conclude from evidence of Petitioner's prior convictions that

Petitioner was a bad person or likely to commit crimes. The trial court also stated that the jurors

should not convict Petitioner because they thought he was guilty of other bad conduct and that they

must find Petitioner not guilty unless all the evidence convinced them beyond a reasonable doubt

that Petitioner committed the alleged crimes. Evidence of Petitioner's prior crimes was admitted

only for the purpose of determining whether it tended to show that Petitioner intended to murder

Molette.

The Court concludes from the trial court's cautionary instructions, which the jurors are presumed to have followed, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), and from the compelling testimony at trial that the improper admission of evidence regarding Petitioner's conviction for carrying a concealed weapon could not have had a substantial and injurious effect or influence on the jury's verdict. The state appellate court's finding of harmless error was objectively reasonable.

### 2.  The 1992 Convictions for Felonious Assault and Felony Firearm

Evidence of Petitioner's 1992 convictions for felonious assault and felony firearm also was admitted at his trial. The trial court ruled at a pretrial hearing that those convictions were admissible in evidence, but that the prosecutor could not elicit information that the victim died as a result of the shooting.

At the subsequent trial, retired police officer Arlie Lovier read Petitioner's confession from the 1992 case into the record. In his confession, Petitioner admitted that, on May 31, 1992, he pulled a gun from his waistband and asked the occupants of a car whether they had robbed "his boy Chuck." Petitioner also admitted in his confession that he fired one gunshot into the car when the driver of the car moved as though he were reaching for something. He informed Officer Lovier that he had not meant to kill anyone. The Michigan Court of Appeals held that the trial court did not err in permitting the prosecutor to elicit this evidence, because the evidence was relevant to Petitioner's state of mind and to rebut his self-defense theory.

This Court finds no merit in Petitioner's claim about his 1992 convictions because

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence . . . .  While the Supreme Court has addressed whether prior acts testimony is

> permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed.2d 574 (1997); *Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003); *see also Bey v. Bagley*, 500 F.3d 514, 519-23 (6th Cir. 2007), *cert. denied*, __ U.S. __, 128 S. Ct. 1704 (2008).  As there is no Supreme Court decision barring the use of propensity evidence on constitutional grounds, the state court's finding – that evidence of Petitioner's felonious assault conviction was admissible – was not contrary to Supreme Court precedent.  And even though Petitioner's confession revealed that a death resulted from the 1992 shooting, defense counsel used Petitioner's comment that he did not intend to kill the 1992 victim to argue that Petitioner also lacked an intent to kill in this case.  The alleged error was harmless in light of the other evidence against Petitioner.

### B.  Evidence of the Most-Wanted List

Petitioner's second claim alleges that he was denied his right to a fair trial when the prosecutor elicited testimony that Petitioner moved to Alabama after the shooting and appeared on the television show Detroit's Most Wanted List.  The Michigan Court of Appeals held that the trial court's admission of evidence of Petitioner's flight from the state was not necessarily an abuse of discretion and that any potential error in admitting the evidence was harmless, given the eyewitness testimony concerning Petitioner's shooting of Molette.  The Court of Appeals held that evidence of Petitioner's profiling on Detroit's Most Wanted List should not have been admitted because there was an insufficient foundation for the evidence.  The Court of Appeals nevertheless determined that the error did not affect the outcome of the proceedings.

Evidence that a defendant fled the jurisdiction and attempted to evade arrest is

8

admissible under state law to show consciousness of guilt. *People v. Biegajski*, 122 Mich. App. 215, 220; 332 N.W.2d 413, 415 (1982); *People v. Coleman*, 210 Mich. App. 1, 4; 532 N.W.2d 885, 887 (1995). And for Petitioner to prevail on his claim that he was profiled as a person wanted by the authorities, "he must prove that the admission of this 'bad acts' evidence resulted in actual prejudice" and "that this trial error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Ford v. Curtis*, 277 F.3d 806, 811 (6th Cir. 2002) (citing *Brecht*, 507 U.S. at 637).

As noted, evidence of Petitioner's guilt was substantial. Four eyewitnesses to the crime identified Petitioner as the shooter, and other bystanders provided Petitioner's name to the police. There was no evidence that Molette was armed or that he moved in such a way that Petitioner could have reasonably believed he was in imminent danger of death or great bodily harm. Molette claimed that he thought the fist fight was going to resume when Petitioner approached him, and witnesses claimed that Molette merely put up his fists.

The alleged errors, therefore, could not have had a substantial and injurious effect or influence on the jury's verdict. The state court reasonably concluded that the errors were harmless. **C. The Claims Raised on State Collateral Review**

Petitioner has attempted to raise three new issues that he presented to the state court for the first time in his motion for relief from judgment.[2] A threshold question is whether Petitioner exhausted state remedies for those claims by presenting the claims to the Michigan Court of Appeals and to the Michigan Supreme Court. *See* 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S.

---

[2] A fourth claim that Petitioner raised in his motion for relief from judgment is not a new claim, but a repetition of his claim about propensity evidence.

838, 845 (1999); *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009).  Although Petitioner appealed

the trial court's decision to the Michigan Court of Appeals, his application for leave to appeal in the

Michigan Supreme Court was rejected as untimely under Michigan Court Rule 7.302(C)(3).

> A petitioner procedurally defaults claims for habeas relief if the
> petitioner has not presented those claims to the state courts in
> accordance with the state's procedural rules.  See *Wainwright v.*
> *Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed.2d 594 (1977); *Coe*
> *v. Bell*, 161 F.3d 320, 329 (6th Cir. 1998); *Couch v. Jabe*, 951 F.2d
> 94, 96 (6th Cir. 1991).  Therefore, if a petitioner procedurally
> defaults a claim in state court, that procedural default carries over to
> federal court and precludes habeas review of that claim in federal
> court.

*Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  To overcome a state procedural default, a

habeas petitioner must show "cause" for his default and actual prejudice as a result of the alleged

constitutional error or demonstrate that the Court's failure to consider the substantive merits of his

claims will result in a fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. 722, 750

(1991).

      Petitioner attempts to establish "cause" for his failure to file a timely application in

the Michigan Supreme Court by alleging that he was waiting for the Michigan Court of Appeals to

rule on his motion for reconsideration.  Michigan Court Rule 7.302(C)(2), however, requires

applications for leave to appeal in criminal matters to be received within fifty-six days of the Court

of Appeals decision.  There is no exception to this rule, *see* Mich. Ct. R. 7.302(C)(3) ("Late

applications will not be accepted."), and Petitioner's ignorance of the procedural requirements for

filing a timely appeal in the Michigan Supreme Court does not excuse his procedural default.

*Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

The Court need not determine whether Petitioner was prejudiced by the alleged constitutional errors, because he has not shown "cause" for his procedural default. *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003) (citing *Simpson*, 238 F.3d at 408). The narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional errors probably resulted in the conviction of one who is actually innocent of the underlying offenses. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). "To be credible, [a claim of innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner has not presented any new evidence in support of a claim of actual innocence. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to consider the substantive merits of the new claims that Petitioner presented in his motion for relief from judgment. Those claims are procedurally defaulted.

## IV. Conclusion

The state appellate court's rejection of Petitioner's two exhausted claims did not result in an unreasonable application of the facts. The state court's decision also was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Petitioner's remaining claims regarding perjury, the racial composition of his jury, and his trial attorney are procedurally defaulted. Accordingly, the habeas petition [Dkt. #1] is **DENIED**.

Reasonable jurists would not find the Court's resolution of Petitioner's exhausted

11

claims debatable or wrong.  Reasonable jurists also would not find it debatable whether the Court's ruling on Petitioner's procedurally defaulted claims was correct or whether Petitioner has stated a valid claim of the denial of a constitutional right.  The Court therefore **DECLINES** to issue a certificate of appealability.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner nevertheless may proceed *in forma pauperis* on appeal, because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

       SO ORDERED.

                      S/Bernard A. Friedman
                      Bernard A. Friedman
                      Senior United States District Judge

Dated:  January 28, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 28, 2010, by electronic and/or ordinary mail.

                      S/Felicia Moses for Carol Mullins
                      Case Manager